**GODOT, S.A., a foreign corporation,
Plaintiff,**

v.

**WENDY'S INTERNATIONAL, INC., a foreign corporation, Defendant.**

No. 02–21783–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 24, 2004.

Richard Michael Dunn, Raquel Maria Gonzalez, Bilzin, Sumberg, Baena, Price & Axelrod, Miami, FL, for Plaintiff.

Wilfredo A. Rodriguez, Daniel Oswaldo Mena, John Michael Hogan, Dana Lynn Choi, Holland & Knight, Miami, FL, for Defendant.

### *ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MORENO, District Judge.

Before the Court is a seemingly straightforward contractual dispute arising out of a sub-concession agreement and related guaranty. Plaintiff Godot, S.A.'s complaint alleges that Defendant Wendy's International, Inc., breached its guaranty

agreement. Defendant disputes this allegation and moves for entry of final summary judgment in its favor. Unlike other actions brought before this Court, the dispute between these parties has called upon the Court to apply the laws of a foreign land, namely Argentina. In light of the applicability of Argentine law, coupled with the Court's unfamiliarity with Argentine jurisprudence, the Court made the otherwise extraordinary step of certifying interrogatories to an Argentine law expert, Dr. Rafael La Porta Drago, on October 29, 2003 to assist the Court in applying Argentine law. On December 5, 2003, Dr. La Porta submitted his report. The report was published, the parties were given the opportunity to respond, and in addition, Dr. La Porta was flown to Miami to allow the parties an opportunity to conduct cross-examination regarding their particular objections. For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

## I. BACKGROUND

The two operative contracts that give rise to this dispute are the sub-concession and guaranty agreements. The sub-concession agreement was entered into by WenCo, S.A. ("WenCo"), a subsidiary of Defendant Wendy's International, Inc. ("Wendy's"), and Facilven, S.A. ("Facilven"). After the sub-concession agreement was assigned to Plaintiff Godot, S.A. ("Godot"), Wendy's and Godot entered into a guaranty agreement, whereby Wendy's agreed to be held liable for any breaches of the concession agreement on the part of its subsidiary, WenCo.

### A. Sub–Concession Agreement

The concession agreement relates to property located in a rail station in Buenos Aires, Argentina. It is owned by the federal government of Argentina. Concessions, such as the one at issue here, are generally granted through various governmental entities, including Ferrocarriles Metropolitanos, S.A. ("FE.ME.SA."), Ete Nacional de Administracion de Bienes Ferroviarios ("ENABIEF"), and Organismo Nacional de Administracion de Bienes ("ONABE"). The original concession, or master lease, was executed between FE.ME.SA and Panter S.R.L. ("Panter") on February 26, 1993. Panter then sublet the property to Facilven, S.A. ("Facilven") in March, 1995. Next, Facilven entered into a sub-concession agreement with WenCo on June 12, 1996.

The sub-concession agreement, originally executed between WenCo and Facilven is the subject of much of the dispute between the parties. Paragraph seven of the sub-concession agreement provides in pertinent part:

> The contract may also be rescinded by either party if the main franchise in the name of Panter S.R.L. should be rendered without effect for any reason, which will automatically cause the resolution of this contract without the parties being entitled to any claims against each other.

Three months after entering the sub-concession agreement, Facilven assigned its rights under the agreement to Plaintiff Godot on September 2, 1996. In turn, on May 26, 2000, Godot assigned its rights under the sub-concession agreement to Harbor, S.A. ("Harbor"), who then assigned its rights to an individual, Marcelo José Bursa ("Bursa").

In October, 2000, Godot attempted to rescind the assignment to Harbor. However, on June 15, 2000, after the assign-

ment to Harbour and before the rescission, the Argentine government, through its agency ENABIEF, terminated the primary concession agreement. The termination was appealed and an injunction was issued, preventing the termination of the primary concession agreement. However, an appeals court set aside the injunction on October 10, 2000. Godot filed a "special appeal" of the appeals court decision before the Supreme Court of Argentina on August 9, 2001. Finally, as a result of the termination of the primary concession agreement, WenCo entered into a termination agreement with Bursa on November 20, 2000.

## B. Guaranty Agreement

In connection with the sub-concession agreement between Godot and WenCo, WenCo's parent company, Wendy's, executed a separate guaranty agreement with Godot on February 19, 1999. The guaranty, which is to be enforced under Ohio law, provides that Wendy's shall be liable for all payments if the sub-concession agreement is terminated for any reason other than Godot's default.

## C. Allanamiento

Further, the Court notes that in subsequent litigation between Harbour and Godot, Harbour acknowledged the validity of Godot's rescission of its assignment in the Argentine equivalent of a stipulation or admission by a party, referred to as an *allanamiento,* on April 15, 2002.

## D. Expert Opinion

In view of the applicability of Argentine law, the Court certified interrogatories to Dr. Rafael La Porta Drago on October 29, 2003. On December 5, 2003, Dr. La Porta submitted his report to the Court. The report was then published and a scheduling order was entered to allow the parties to respond to the report. Plaintiff Godot filed an objection on March 5, 2004. Defendant Wendy's responded to Godot's objection on March 12, 2004. Then, on March 19, 2004, Godot filed its reply to the response. Finally, on April 20, 2004, Dr. Rafael La Porta was made available for cross-examination. In addition to the opportunity for cross-examination, the Court allowed the parties to present oral argument for a second time on the merits of Defendant's motion for summary judgment.

## II. DIAGRAMS OF THE CONTRACTUAL FRAMEWORK

Due to the complexity of the contractual framework underpinning the dispute between the parties, the Court has fashioned a diagram of the various transactions.

GUARANTY K

WENDY'S {Defendant} ⎯⎯⎯⎯⎯⎯⎯⎯⟶ GODOT {Plaintiff}

[February 14, 1999]

Fe.Me.SA.(public entity)

-[primary concession/ master lease]

Panter

-[lease]

WENDY'S {Defendant}

SUB-CONCESSION K

WenCo ⟵⎯⎯⎯⎯⎯⎯⎯⎯⟶ Facilven
(subsidiary) [June 12, 1996]

-[assignment on September 2, 1996]

GODOT {Plaintiff}
-[assignment on May 26, 2000]

Harbour
-[assignment on May 31, 2000]

Bursa

## III. LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

Defendant Wendy's advances three separate arguments in support of its motion

for summary judgment. First, Defendant argues that the termination of the master lease rendered the sub-concession agreement without effect and as a result, Defendant did not breach the guaranty agreement. Second Defendant advances the position that as a consequence of its assignment to Harbour, Plaintiff is no longer the holder of the guaranty. Finally, Defendant contends that the termination agreement between WenCo and Bursa effectively extinguished its obligations under the guaranty agreement.

### A. Applicability of Argentine Law

Before addressing the merits of Defendant's motion for summary judgment, the Court first notes that although Ohio law governs the guaranty agreement, recourse to Argentine law must be made in order to resolve the underlying dispute over the parties' performance of the guaranty agreement. Because the guaranty directly relates to the performance of the sub-concession agreement executed by WenCo, the Court must resort to Argentine law in considering the following relevant agreements: (1) the sub-concession agreement; (2) the termination agreement; (3) the assignment from Plaintiff to Harbour; and (4) the assignment from Harbour to Bursa.

### B. Termination of the Master Lease

Defendant contends that because ENABIEF terminated the master lease, the sub-concession agreement was rendered without effect and as a result, Wendy's did not breach its guaranty agreement. Plaintiff disputes this contention and argues that the termination of the master lease never became final and therefore, the sub-concession agreement was never rendered without effect.

In disposing of the issue raised by Defendant, it is necessary for the Court to determine whether WenCo has a right, under Argentine law, to unilaterally terminate its lease as a result of ENABIEF's resolution. In answering this question, the Court must determine whether the ENABIEF resolution was suspended as a result of an administrative appeal and if not suspended, whether the resolution rendered the master lease "without effect" such that unilateral termination was appropriate.

### 1. Effect of the Special Appeal

■ Godot contends that by filing a special appeal before the Supreme Court of Argentina, the execution of the ENABIEF resolution, terminating the master lease with Panter, was stayed. However, under Argentine law, the pendency of an administrative appeal or even a court appeal does not suspend the execution of an administrative order. The Court of Appeals, in its decision to set aside the preliminary injunction obtained to stop the execution of the resolution indicated that:

> [A]dministrative acts are presumed to be legitimate and are enforceable by operation of law for which reason, as a general rule, neither the administrative appeals nor the legal actions contesting their validity may preclude the enforcement thereof (ref. to Art. 12 of Law No. 19,549 and this Court's ruling in *Joyart*, IX—19–91)."

Godot cites a case from the Supreme Court of Argentina[1] which holds that the filing of a special appeal stays the execution of the decision being challenged. Even assuming that Plaintiff's contention is an accurate representation of Argentine

---

1. *NSCJ*, opinion of 10/23/2001 published in *La Ley*, Volume 2001–F, pg. 795.

law, the Court is still persuaded that the special appeal does not operate to alter the relationship between Wendy's and Godot. The Court of Appeals decision, reversing the injunction, was entered on October 20, 2000. WenCo terminated its agreement on November 2, 2000. More than nine months later, on August 9, 2001, Godot took its special appeal of the Court of Appeals' decision. Even assuming that a special appeal stayed the enforcement of the resolution, the Court cannot accept the proposition that such an appeal has the retroactive effect of staying the enforcement of the resolution prior to the date the appeal was taken. At most, the appeal stayed the enforcement of the resolution from the date it was taken, August 9, 2001.

## 2. Rendering "Without Effect"

■ After concluding that the pendency of the special appeal does not suspend the execution of the ENABIEF resolution, the Court must next consider whether the resolution rendered the sub-concession agreement without effect. Incorporated into the sub-concession agreement at paragraph seven is a provision detailing the parties' rights of rescission in the event the master lease is rendered without effect. Moreover, a review of Argentine law indicates that even if the parties had not included a right of rescission in their agreement, the termination of the master lease caused the termination of the sub-concession agreement. Section 1606 of the Civil Code provides that the termination of a lease has the effect of either terminating or allowing for the termination of any sub-lease. This conclusion is buttressed by the well-accepted principle enunciated in Civil Code. § 3270 that "no person can assign to another person a better or more extensive right over a thing, than the right that he enjoyed." Indeed, it stands to reason that if the master lease is terminated, then any assignments and subleases predicated on the master lease would also be terminated.

Plaintiff claims that in order to render an agreement without effect, it is necessary to terminate the agreement by an adjudication or agreement. Plaintiff claims there was never any clear intent from the parties that Panter's possession be disturbed. In support of this contention, Plaintiff points to a settlement agreement between ONABE and Panter, entered on December 20, 2001 (a year and a half after the termination), which "rendered without effect the rescission of the concession agreement". Because the rescission was rendered without effect, Plaintiff contends that the master lease was never rendered "without effect".

First, the Court is not persuaded by Plaintiff's contention that an agreement or adjudication is necessary in order to render an agreement without effect. The master lease between FE.ME.SA. and Panter was terminated because Panter failed to pay the rent due under the lease. The terms of the master lease provide that the agreement will be rendered automatically void upon the failure to remit lease payment.[2]

Further, the Court is similarly unconvinced by Plaintiff's contention that the settlement agreement between ONABE and Panter indicates that the master lease was never rendered without effect. The master lease was terminated by the ENABIEF resolution in June, 2000. The settlement agreement, rendering the resolution without effect, was entered in December, 2001. It does not follow that be-

2. Master Lease, Section 2.

cause the resolution was rendered without effect, that prior to the settlement, the resolution did not render the master lease without effect. Indeed, including such language into the settlement agreement leads to the opposite conclusion. In other words, indicating in their settlement agreement in December of 2001, that the resolution is rendered without effect leads to the conclusion that prior to the settlement agreement, the resolution was given effect.

As a result of the ENABIEF resolution terminating the master lease, the Court finds that the sub-concession agreement was rendered without effect. The termination of the master lease caused the termination of the sub-concession agreement. Alternatively, the ENABIEF resolution rendered the master lease without effect such that it triggered WenCo's right of rescission arising from paragraph seven of the sub-concession agreement.

### C. Assignment of the Sub–Concession Agreement

In addition to the termination of the master lease, Defendant contends that summary judgment is appropriate because Plaintiff no longer holds the benefit of the guaranty as a result of its assignment of the sub-concession agreement to Harbour on May 26, 2000.

 Under Argentine law, the assignment of a lease has the effect of assigning any guarantees of that lease. Civil Code § 1459 provides that an assignment includes "all accessory rights such as personal guaranties, mortgages, pledges,

overdue interest and credit priorities that are not merely personal." In addition, the parties could not have contracted out of this result and maintained with Plaintiff the benefit of the guaranty. See Codigo Civil, art. 499.

Plaintiff contends that it rescinded the assignment to Harbour in October, 2000 and as a result, it was the holder of the guaranty in November, 2000, at the time of WenCo's termination of the sub-concession agreement.

 On the issue of the validity of Plaintiff's rescission of its assignment to Harbour, the Court notes that both the assignment from Godot to Harbour and that of Harbour to Bursa comported with the legal requirements of being executed in written form coupled with service of notice to the assigned debtor.[3] Further, the Court finds that the assignment was not validly rescinded because Plaintiff did not have a valid ground upon which to base such a rescission. Under Argentine law, an assignment can be validly rescinded in one of the following four ways: (1) the assignment contained a termination clause[4]; (2) the contract was executory[5]; (3) a cause for annulment existed at the time of the assignment; or (4) if the continued validity of the assignment was tied to the occurrence of a specific fact.[6]

 The attempted rescission failed to satisfy any of the four accepted manners of valid rescission of assignments. First, the assignment did not contain a termination clause. Second, the sub-concession agreement was not executory because the assignment was completed in return for the

---

**3.** Civil Code §§ 1454, 1459.

**4.** Civil Code § 1203.

**5.** Civil Code § 1204.

**6.** Civil Code § 553.

payment of $90,000, which was paid at the time of the agreement's execution. Third, no cause for annulment existed at the time of the assignment as the assignment was executed prior to the ENABIEF resolution terminating the master lease.

■ Finally, the continued validity of the assignment was not tied to the occurrence of a specific fact. Plaintiff contends that the assignment was contingent on an agreement between Plaintiff and Southern Star, a third party. However, the Court is unconvinced that the mere mention of another agreement in the preamble of an assignment operated to create a specific condition on the validity of the assignment.

■ Plaintiff also contends that as a result of litigation involving Plaintiff and Harbour, an *allanamiento* was entered on April 15, 2002, that acknowledged the validity of Plaintiff's rescission of the assignment to Harbour. However, because the *allanamiento* was entered over a year and a half after the termination of the sub-concession agreement and WenCo was not a party to its adoption, it must operate retroactively and be awarded *res judicata* effect in order for the *allanamiento* to obtain relevance to the dispute between Wendy's and Godot.

First, whether an *allanamiento* has retroactive effect depends on the content of the issues admitted and the nature of the court's judgment. Here, the court's judgment was of a constitutive, not declaratory nature. That is, if a judgment declares the absolute nullity of an act, that judgment would necessarily have retroactive effect in order to give moment to the ruling. Conversely, where as here, where

the judgment merely establishes a right, it is necessarily effective only from the date of the judgment. Moreover, the *allanamiento* to which the Plaintiff points the Court's attention, itself declares that the parties consent and accept the stipulation *"as from the date of the allanamiento"*.

Second, as to its effect on non-parties, the *allanamiento* does not have *res judicata* effect because *allanamientos* should be equated to final judgments. As such, their *res judicata* effect is limited to the parties involved. Because WenCo was not involved in the litigation between Harbour and Godot, the *allanamiento* may not be given *res judicata* effect to the prejudice of WenCo's position on the validity of Plaintiff's rescission of the assignment to Harbour.[7]

### D. Termination Agreement Between Wen–Co and Bursa

Finally, Defendant's third ground for summary judgment is that because WenCo validly entered into a termination agreement with Bursa, the sub-concession agreement was terminated and as a result, Defendant never breached the guaranty agreement. Plaintiff counters that the termination agreement with Bursa did not operate to terminate the sub-concession agreement. Plaintiff advances two separate arguments in support of claim. First, Plaintiff contends that because Harbour failed to give Plaintiff notice of the assignment to Bursa, the assignment was invalid. Second, Plaintiff contends that the assignment to Bursa was invalid because it was undertaken for the sole purpose of defrauding Plaintiff.

#### 1. Notice Requirement

■ On the issue of notice, Plaintiff argues that Harbour was obligated to notify

---

7. *See* Palacio, Lino Enrique, *Derecho Procesal Civil*, Volume V, Abeledo Perrot, Buenos Aires, 1975, at § 685.

Plaintiff of the assignment to Bursa. In support of this position, Plaintiff urges the Court to view the assignment from Godot to Harbour as a bilateral contract. Under Argentine law, a bilateral contract may not be assigned without the consent of the other contracting party. National Mercantile Appeals Division, Court B, November 20, 1991, *Dumpex S.A. v. Permanente, Comapania* Financeria, published in *La Ley,* Volume 1993–D, page 197.

■ In essence, Plaintiff here attempts to recast its assignment to Harbour as a bilateral contract. The case cited by Plaintiff in its bilateral contract argument stands for the proposition that a contract cannot be assigned without the consent of the other contracting party. If the bilateral contract at issue is Harbour's assignment to Bursa, the other contracting party whose consent is required is necessarily WenCo, the party to the sub-concession agreement, not Godot, the assignor.

Plaintiff's next contention in support of its notice argument is that notice is required the Civil Code of Argentina. Specifically, Plaintiff points to Civil Code § 1596, which states that "a lessee who subleases or assigns the lease may not, under any other clause, free himself from his obligations to the lessor without the latter's consent." Here again, Plaintiff attempts to recast its assignment. However, instead of urging the Court to view the assignment as a bilateral contract, Plaintiff here urges the Court to view the assignment as a lease between Plaintiff and Harbour.

Similar to the authority on bilateral contracts, Civil Code § 1596 does not require notice to Plaintiff of the assignment to Bursa. The relationship between Plaintiff and Harbour is not a lessor/lessee relationship. The only lessor/lessee relationship exists between the holder of the assignment and WenCo, pursuant to the terms of sub-concession agreement. Civil Code § 1596 would require that the lessee (WenCo) give notice to the lessor (the holder of the assignment) before the lessee could "free himself from his obligations to the lessor".

The Court is not persuaded by Plaintiff's attempts to recast its assignment to Harbour as both a bilateral contract and as a lease agreement. On the issue of notice, Civil Code § 1459 sets out the notice requirement for the perfection of assignments. It provides in pertinent part:

> Regarding third parties who may have a legitimate interest in contesting the assignment to preserve rights acquired after it took place, title over the credit is not passed to the assignee but for the notice of the transfer [given] to the assigned debtor, or by the acceptance of such transfer on his part.

Here, the assigned debtor is the other contracting party to the sub-concession agreement that is being assigned. The assigned debtor in the assignment from Harbour to Bursa is WenCo. Section 1459 requires notice to the assigned debtor, not the previous assignor in order to perfect an assignment. Accordingly, the Court is left with the conclusion that Harbour was not obligated to notify Plaintiff of its assignment to Bursa.

### 2. Fraud in Assignment

■ Additionally, Plaintiff contends that the assignment from Harbour to Bursa was invalid because it was undertaken to defraud Plaintiff by making it more difficult for Plaintiff to recover the property. In support of its contention, Plaintiff points out that Bursa is a clerk in a nota-

ry's office with very modest means. In addition, Bursa is a clerk in the very same notary's office that notarized the assignment from Harbour to Bursa. Further, Plaintiff alleges Bursa never paid the consideration of $450,000 to Harbour, as was recorded in the assignment, and that Bursa never acted as the landlord of the property. See Plaintiff's Response to Motion for Summary Judgment at 25–26.

Even assuming that the assignment from Harbour to Bursa was executed for the sole purpose of defrauding Plaintiff,[8] Defendant is nevertheless entitled to summary judgment because Defendant did not have notice that the assignment to Bursa was fraudulent. Civil Code § 1051 provides:

> All real or personal rights transferred to third parties over a piece of real estate by a person who has obtained title by virtue of the annulled act are left without any effect and may be claimed directly from the current possessor, save for the rights of bona fide third parties who acquired for valuable consideration.

The Argentine Civil Court of Appeals explained that § 1051 protects bona fide third party purchasers who acquire interests in real property from sellers with interests that are subject to annulment.

Applied by analogy to the facts of this case, Defendant appears to qualify as a bona fide third party purchaser under § 1051. Here, the alleged fraudulent assignment was executed between Harbour and Bursa. Defendant, without knowledge of the fraud, entered into an otherwise valid termination agreement with Bursa,

discharging the obligations under the sub-concession agreement. Applying the logic of § 1051, Defendant is protected from Plaintiff's claims of fraud in the Bursa assignment for the reason that at the time of the execution of the termination agreement, Defendant had no knowledge that Bursa's status as lessor was subject to annulment or rescission.

## V. CONCLUSION

After careful consideration of the motion, the response, the expert report, the objections, and the pertinent portions of the record, the Court finds that Defendant is entitled to summary judgment on three separate grounds. First, the termination of the master lease rendered the sub-concession agreement without effect such that Defendant did not breach its guaranty agreement. Second, the assignment of the sub-concession agreement caused the assignment of the guaranty and as a result, Plaintiff is no longer the holder of the guaranty. Third, even assuming fraud in the assignment to Bursa, Defendant is protected by analogy as a third party purchaser. Accordingly, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment (**D.E. No. 58**), filed on *June 30, 2003* is hereby GRANTED.

---

8. Plaintiff's contention that it was defrauded because the assignment to Bursa made it more difficult for Plaintiff to recover the property is tenuous because no express provision was included in the assignment to Harbour, restricting Harbour's ability to assign the contract.